UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- X

RACHEL BERNSTEIN; STUART HERSH; RON
MORITZ; JOEL BAILEY; JERE FINER; DANIELLA
FINER; MOSHE FULD; HAIM BARAD; LOUIS
MURRAY LIPSKY; IRA HARTMAN; KEREN
EIZENBERG; CHANIE GELLER; GREG GELLER;
RACHEL STERN; MARTHA LEV-ZION;
NORMAN MESKIN; CHERYL MESKIN;
WILLIAM WERBLOWSKY; MARK REBACZ; AVI
PENKOWER; MONTY PERNKOWER; SUSAN
IRELAND, BRIAN NORIN AND NATHAN
LAMM,

               Plaintiffs,

              -against-

HILLARY R. CLINTON, in her official capacity as
Secretary of the United States Department of State;
THOMAS R. NIDES, in his official capacity as
Deputy Secretary of State for Management and
Resources; JOHN DOE, Director, Office of U.S.
Foreign Assistance Resources, in his official
capacity; UNITED STATES DEPARTMENT OF
STATE; RAJIV SHAH, in his official capacity as
Administrator of the United States Agency for
International Development; and UNITED STATES
AGENCY FOR INTERNATIONAL
DEVELOPMENT,

               Defendants.

-------------------------------------------------------------------- X

12 Civ. _____ (___)


**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, complaining of the defendants, by their attorney, NORMAN STEINER, ATTORNEY AT LAW, alleges for their complaint as follows:

## NATURE OF ACTION

1.      Plaintiffs are all American citizens who reside in Israel. All live fearful of terrorist attacks against them. They bring this action to ensure their security and to cause United States governmental funding in violation of legal requirements and Congressional regulations to the Palestinian Authority and the United Nations Relief and Works Agency for Palestine Refugees in the Near East ("UNRWA") to cease.

2.      Plaintiffs are all innocent civilians who live in close proximity to the Palestinian Authority and are the Americans most likely to be harmed by Palestinian terrorism. Several are victims of previous Palestinian terrorist attacks.

3.      Defendants have authorized, sanctioned, encouraged, and/or facilitated funding to the Palestinian Authority without imposing the controls and oversight mandated by federal statute. In addition, Defendants have ignored reporting requirements and allowed the Palestinian Authority to evade transparency safeguards mandated by American law. In so doing, they have allowed federal dollars into the hands of Hamas and the Popular Front for the Liberation of Palestine (both recognized foreign terrorist organizations), the Palestinian Liberation Organization (a terrorist organization), employees of the Palestinian Authority who are barred access to federal funds pursuant to federal statute, and other supporters of terrorism against civilians who live in Israel.

4.      Illicit federal funding endangers the lives of the Plaintiffs and their loved ones.

5.      Plaintiffs bring this action to stop that funding, demand that illegal disbursements be divested from the Palestinian Authority, that any future funding be in compliance with U.S. law and regulations and to secure their safety.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (action arising under the laws of the United States), 1346(a)(2) (United States as defendant), and 1361 (mandamus).

7.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and (e).

8.      Upon information and belief, all Defendants reside in the District of Columbia.

9.      A substantial part of the events giving rise to this action look place within the District of Columbia.

## PARTIES

### A.      Plaintiffs

10.      Plaintiff Rachel Bernstein is an American citizen who resides in Israel. She was injured in a terrorist attack in 1976 in Jerusalem.

11.       Plaintiff Stuart Hersh is an American who citizen who resides in Israel. He was injured in a 1997 suicide bombing in Jerusalem.

12.      Plaintiff Ron Moritz is an American citizen who resides in Israel.

13.     Plaintiff Joel Bailey is an American citizen who resides in Israel.

14.     Plaintiff Jere Finer is an American citizen who resides in Israel.

15.     Plaintiff Daniella Finer is an American citizen who resides in Israel.

16.     Plaintiff Moshe Fuld is an American citizen who resides in Israel.

17.     Plaintiff Haim Barad is an American citizen who resides in Israel.

18.     Plaintiff Louis Murray Lipsky is an American citizen who resides in Israel.

19.     Plaintiff Ira Hartman is an American citizen, who resides in Israel.

20.     Plaintiff Keren Eizenberg is an American citizen who resides in Israel.

21.     Plaintiff Chanie Geller is an American citizen who resides in Israel.

22.     Plaintiff Greg Geller is an American citizen who resides in Israel.

23.     Plaintiff Rachel Stern is an American citizen who resides in Israel.

24.     Plaintiff Norman Meskin is an American citizen who resides in Israel.

25.     Plaintiff Cheryl Meskin is an American citizen who resides in Israel.

26.     Plaintiff Martha Lev-Zion is an American citizen who resides in Israel.

27.     Plaintiff William Werblowsky is an American citizen who resides in Israel.

28.     Plaintiff Mark Rebacz is an American citizen who resides in Israel.

29.     Plaintiff Avi Penkower is an American citizen who resides in Israel.

30.     Plaintiff Monty Pernkower is an American citizen who resides in Israel.

31.     Plaintiff Susan Ireland is an American citizen who resides in Israel.

32.     Plaintiff Brian Norin is an American citizen who resides in Israel.

33.     Plaintiff Nathan Lamm is an American citizen who resides in Israel.

34.     All of the Plaintiffs live in fear of Palestinian terrorist attacks.

35.     The statutes described below were all enacted by Congress for the purpose of protecting the Plaintiffs and others similarly situated.

36.     As explained below, the Defendants have failed to comply with those statutes. They have consistently provided money and other resources to the Palestinian Authority, UNRWA, and others operating in the West Bank and Gaza, without taking the statutorily-prescribed steps necessary to ensure and safeguard that the money and other resources will not be used by terrorists to harm the Plaintiffs and others similarly situated.

37.     At least in part because of Defendants' illegal activities, Americans and other innocent civilians have been murdered and maimed by Palestinian terrorism.

38.     If the Defendants would comply with federal statute, the terrorists would be less able to inflict harm on innocent civilians. Plaintiffs, as such, seek the enforcement of the federal statutes described below.

## B.      Defendants

39.      Defendant Hillary Clinton is the Secretary of State (hereinafter "Secretary of State"). Pursuant to § 531 of the Foreign Assistance Act of 1961, Pub. L. No. 87-195 (*codified at* 22 U.S.C. § 2346), she is primarily "responsible for policy decisions and justifications for economic support programs [operating] under [or pursuant to the Economic Support Fund], including determinations of whether there will be an economic support program for a country and the amount of the program for each country." *Id*

40.      Additionally, it is Defendant Secretary of State's responsibility to "coordinat[e] all [foreign] assistance related to international terrorism." 22 USC § 2349AA–7.

41.      Defendant Secretary of State is responsible for coordinating all federal aid to the Palestinian Authority and UNRWA.

42.      Upon information and belief, it was primarily Defendant Secretary of State's decision to allocate nearly $200 million from the Economic Support Fund to the Palestinian Authority in 2012 and in other amounts previously.

43.      Additionally, Defendant Secretary of State is "responsible for coordinating all assistance related to international terrorism," including terrorism waged by Hamas, the Popular Front for the Liberation of Palestine, the Palestinian Liberation Organization, and others in the West Bank and Gaza. In that role, she is required to "report to the appropriate committees of the Congress on the assistance

related to international terrorism which was provided by the United States Government during the preceding fiscal year." 22 U.S.C. § 2349aa-7.

44.     Funding "related to international terrorism," as referenced in the prior paragraph, includes funding intended to "enhance the ability of their law enforcement personnel to deter terrorists and terrorist groups from engaging in international terrorist acts" such as "training services and … matters relating to the detection, deterrence, and prevention of acts of terrorism…." 22 U.S.C. § 2349aa.

45.     Defendant Secretary of State is involved with and knowledgeable of materially all federal funding to the Palestinian Authority and UNRWA and other sources of funding that reach terrorist organizations operating within the West Bank and Gaza.

46.     Defendant Thomas Nides is the Deputy Secretary of State for Management and Resources. He "serves as principal adviser to [Defendant Secretary of State Clinton] on over-all supervision and direction of resource allocation and management activities of the [State] Department." http://www.state.gov/s/dmr/. He plays an integral role in the State Department's allocation of foreign aid. He additionally supervises and is responsible for the State Department's Office of U.S. Foreign Assistance Resources. http://www.state.gov/f/.

47.     Upon information and belief, Defendant Nides was chiefly responsible for advising Defendant Secretary of State to allocate nearly $200 million dollars from the Economic Support Fund to the Palestinian Authority in 2012 and in other amounts previously.

48.   Defendant John Doe,[1] Director, Office of U.S. Foreign Assistance Resources, is the chief officer of the office of the State Department that "ensures the strategic and effective allocation, management, and use of foreign assistance resources." Upon information and belief, the Director, acting through the Office of U.S. Foreign Assistance Resources, has recommended, authorized, encouraged, and/or facilitated the disbursement of aid to the Palestinian Authority, including the allocation of nearly $200 million dollars from the Economic Support Fund to the Palestinian Authority in 2012.

49.   Defendant United States Department of State ("State Department") is chiefly responsible for overseeing the disbursement of foreign aid, including aid to the Palestinian Authority. The State Department additionally oversees and is responsible for the work of Defendant U.S. Agency for International Development ("USAID").

50.   Defendant Rajiv Shah is the Administrator of USAID. He oversees and directs USAID's operations and is ultimately responsible for its decisions.

51.   Defendant USAID is the principal Executive agency of the United States to extend foreign aid to developing and recovering nations. *See* This is USAID, http://www.usaid.gov/about_usaid/ (last accessed June 6, 2012). Upon information

---

[1] Following due diligence, Plaintiffs were not able to definitively indentify the name of the Director of the Office of U.S. Foreign Assistance Resources. Accordingly, he is referred to in this Complaint as "John Doe."

and belief, Defendant USAID was involved in the decision to allocate nearly $200 million dollars from the Economic Support Fund to the Palestinian Authority in 2012.

52.     Defendant USAID was, as of May 16, 2012, involved in many cooperative agreements and contracts with operatives in the West Bank and Gaza. Those obligations total approximately $179,000,000. USAID MISSION BUSINESS FORECAST COMPETITIVE FY 2012 38-39 (2012).

53.     Upon information and belief, Defendant USAID remains involved in many cooperative agreements of the type described in the prior paragraph and that obligate the United States to approximately $200 million.

54.     USAID routinely provides money to the West Bank and Gaza.

55.     Upon information and belief, USAID was aware at all times relevant to this action that Hamas is recognized by the State Department as a "Designated Foreign Terrorist Organization" under Executive Order 13224.

56.     USAID was aware at all times relevant in this litigation that in the January 2006 Palestinian parliamentary elections, Hamas won a majority of the seats in the Palestinian parliament and is in control of large portions of the Palestinian Authority.

57.     Upon information and belief, USAID routinely gives money to actors in the West Bank and Gaza who support terrorism or are themselves terrorists.

58.     Upon information and belief, USAID grants, or their proceeds or effects routinely wind up in the hands of, Hamas or other terrorist organizations and/or their agents or principles.

59.     USAID was aware at all times relevant to this action that Hamas is recognized by the State Department as a "Designated Foreign Terrorist Organization" under Executive Order 13224.

### STATEMENT OF FACTS

**A.     Hamas**

60.     Hamas is listed by the State Department as a Foreign Terrorist Organization.

61.     Hamas is listed by the State Department since October 31, 2001 as an "Entities Designated by the State Department Under E.O. 13224" and remains so designated today.

62.     Executive Order 13224 creates or authorizes a federal asset blocking regime by which the assets of identified persons and entities are seized due to national security concerns.

63.     Designated entities under Executive Order 13224 are so designated only if "the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General" has determined that they "have committed, or ... pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States." Executive Order 13224, § 1(b).

64.    Despite internal disputes with the PLO and its leadership, Hamas retained effective control over critical political decisions in the West Bank during the period 2007-2011.

65.    In 2011, Hamas and its chief PLO rival organization, Fatah, announced that they had achieved reconciliation. The relationship has again become strained at times.

66.    Hamas maintains majority control of the Palestinian Authority.

67.    Hamas effectively controls Gaza.

68.    Hamas's leaders have significant influence over political operations in the West Bank and Gaza.

69.    Hamas receives funding from international humanitarian aid organizations. The funding that Hamas receives from international humanitarian aid organizations facilitates its violent and illegal military objectives.

B.    **The Palestinian Liberation Organization**

70.    Congress has determined "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States." 22 U.S.C. § 5201. Throughout its history, the PLO has committed numerous acts of terrorism, including numerous attacks that have murdered and maimed United States citizens.

71.    The PLO has committed itself to violence, declaring that "armed struggle is the only way to liberate Palestine, thus it is an overall strategy, not merely a tactical phase."

72.     The PLO has been and continues to be, in the words of a former Attorney General of the United States, "in the thick of international terror."

73.     The Palestinian Liberation Organization ("PLO") is a membership organization. Its members, themselves organizations, control its identity and decisions.

74.     A majority of the members of the PLO are terrorist organizations.

75.     The current members of the PLO are:

    a.      Fatah

    b.      Popular Front for the Liberation of Palestine

    c.      Democratic Front for the Liberation of Palestine

    d.      Palestinian People's Party

    e.      Palestine Liberation Front

    f.      Arab Liberation Front

    g.      As-Sa'iqa

    h.      Palestine Democratic Union

    i.      Palestinian Popular Struggle Front

    j.      Palestinian Arab Front

76.     Both the Popular Front for the Liberation of Palestine and the Palestine Liberation Front are listed by the State Department as "Entities Designated by the State Department Under E.O. 13224

77.     The PLO Executive Committee controls the PLO and is the seat of its power.

78.     Upon information and belief, members of the PLO Executive Committee have ties with terrorism.

79.     The PLO's principal objectives are violent and virulently anti-Semitic.

## C.     The Palestinian Authority

80.     The PLO and the Israeli government negotiated and agreed to the Declaration of Principles on Interim Self–Governing Arrangements of September 13, 1993 and the Israeli–Palestinian Interim Agreement on the West Bank and the Gaza Strip of September 28, 1995, which created and set forth the powers and capacities of the Palestinian Authority.

81.     The Interim Agreement sets forth and controls the scope and substance of the Palestinian Authority's powers and capacities. The Palestinian Authority is obligated to take reasonable steps to arrest terrorists, confiscate their weapons and dismantle their terrorist infrastructure. The Palestinian Authority has failed to implement reasonable programs to carry out these obligations.

82.     The principals or lead actors of the PLO play a material role in operating the Palestinian Authority and determining its activities and/or objectives.

83.     Officials of the Palestinian Authority believe that terrorism against innocent civilians is a legitimate means of achieving his political objectives.

84.     Hamas gained majority control over the Palestinian Authority's parliament in the most recent elections. Hamas has effective control over the Palestinian Authority.

85.    Hamas is recognized by the State Department as a terrorist organization.

86.    Fatah is the second largest party in the Palestinian Authority.

87.    Fatah supports terrorism. Fatah openly maintains offices in the West Bank.

88.    The Popular Front for the Liberation of Palestine, another leading Palestinian faction, is designated by the State Department as a terrorist organization.

89.    The Popular Front for the Liberation of Palestine openly maintains offices in the West Bank and Gaza.

90.    The Popular Front for the Liberation of Palestine's operations within the West Bank and Gaza are known to the Palestinian Authority.

91.    The Popular Front for the Liberation of Palestine is a terrorist organization, so designated by the State Department.

92.    The Palestinian Authority provides a terrorist sanctuary to the Popular Front for the Liberation of Palestine.

93.    Congress has found that unless the State Department provides a certification that the Palestinian Authority is not being utilized as a terrorist sanctuary then it should be deemed as a terrorist sanctuary. If such certification "is not in effect with respect to the Palestinian Authority, the territory controlled by the Palestinian Authority should be deemed to be in use as a sanctuary for terrorists or terrorist organizations for purposes of section 6(j)(5) of the Export Administration Act of 1979 [50 App. U.S.C. § 2405 (j)(5)] and section 140 of the Foreign Relations Authorization Act,

-14-

Fiscal Years 1988 and 1989 [22 U.S.C. § 2656f]." Palestinian Anti-Terrorism Act of 2006, 22 U.S.C. § 2378b note.

94.     Funding provided to the Palestinian Authority, and/or the proceeds and effects of that funding, regularly wind up in the hands of the Hamas, PLO, the Popular Front for the Liberation of Palestine and/or its agents and principals.

95.     At least some of the chief actors of the Palestinian Authority are also chief actors of Hamas and the PLO and other terrorist organizations.

96.     Pursuant to the laws or rules governing the Palestinian Authority, it was obliged to hold elections by January 9, 2009. New elections were in fact never held and the authority of the current government has ended. Upon information and belief, no official governmental enactment permitted the sitting Palestinian government to remain in power pending subsequent elections.

97.     Upon information and belief, the Palestinian Authority does not segregate its humanitarian funds from its funds for terrorism.

**D.     Federal Prohibitions Against Aid to the Palestinian Authority, Hamas, the Palestinian Liberation Organization, and for the West Bank, and Gaza**

**1.     State Appropriations Act of 2012**

98.     The Department of State, Foreign Operations, and Related Programs Appropriations Act of 2012, Pub. L. 112-74, 125 Stat. 1164, 1179 ("State Appropriations Act of 2012") (passed Dec. 23, 2011), appropriated $3,001,745,000 to the Economic Support Fund, created by 22 U.S.C. § 2346 *et seq.*, for use until September 30, 2013. It allocated a fraction of that money for use in specific countries. The majority of

the money remained unallocated and therefore available for use pursuant to the discretion of Defendant Secretary of State and her advisors.

99.    The appropriations to the Economic Support Fund by the State Appropriations Act of 2012 were not unusual and are materially similar to appropriations in prior years.

100.    Future appropriations to the Economic Support Fund will likely be similar to the appropriations made by the State Appropriations Act of 2012.

101.    Section 7036 of the State Appropriations Act of 2012, 125 Stat. 1218, expressly prohibits funds appropriated under the Economic Support Fund, among other appropriations, to be used "to support a Palestinian state" unless Defendant Secretary of State previously makes specified findings. Those findings include:

   a.    The governing entity of the new Palestinian state has "demonstrated a firm commitment to peaceful co-existence with the State of Israel."

   b.    The governing entity of the new Palestinian state "is taking appropriate measures to counter terrorism and terrorist financing in the West Bank and Gaza."

   c.    The Palestinian Authority "is working with other countries in the region to vigorously pursue efforts to establish a just, lasting, and comprehensive peace."

102.    Defendant Secretary of State has not made the findings specified above.

103.   Defendant Secretary of State Clinton could not have made, in good faith, these findings because the Palestinian Authority has not:

    a.   demonstrated a firm commitment to peaceful co-existence with the State of Israel

    b.   taken (or even initiated the process of taking) appropriate measures to counter terrorism and terrorist financing in the West Bank and Gaza, or

    c.   begun working with other countries in the region to vigorously pursue efforts to establish a just, lasting, and comprehensive peace with Israel.

104.   The State Appropriations Act of 2012, § 7036(c), 125 Stat. 1219, specifies that the President has authority to waive the prohibition described above if he finds that doing so is important to the national security interests of the United States (hereinafter "the waiver").

105.   Upon information and belief, President Obama has not exercised this waiver.

106.   Section 7039 of the State Appropriations Act of 2012, 125 Stat. 1220, specifies that "30 days prior to the initial obligation of funds for the bilateral West Bank and Gaza Program," Defendant Secretary of State is obligated to certify that adequate procedures are in place to review the use of Economic Support Fund resources utilized in the West Bank and Gaza (hereinafter "the certification")

107.    Upon information and belief, the adequate procedures referenced above are not in place.

108.    Upon information and belief, Defendant Secretary of State has not provided the certification, pursuant to Section 7039 of the State Appropriations Act of 2012, that the adequate procedures referenced above are in place.

109.    Section 7039(b), compels Defendant Secretary of State to "take all appropriate steps to ensure that … assistance [under the Economic Support fund] is not provided to or through any individual, private or government entity, or educational institution that [Defendant Secretary of State] knows or has reason to believe advocates, plans, sponsors, engages in, or has engaged in, terrorist activity" prior to providing Economic Support Fund resources of assistance for the West Bank and Gaza.

110.    Section 7039(c) prohibits many of the funds appropriated under the State Appropriations Act of 2012, including funds appropriated under the Economic Support Fund, to be "made available for the purpose of recognizing or otherwise honoring individuals who commit, or have committed acts of terrorism."

111.    Section 7040(a) of the State Appropriations Act of 2012, 125 Stat. 1221, prohibits funds appropriated to carry out portions of the Foreign Assistance Act of 1961 (which includes the Economic Support Fund), to be "obligated or expended with respect to providing funds to the Palestinian Authority."

112.    Section 7040(b) specifies that the President has authority to issue a waiver to the prohibitions set out above if he finds that doing so is important to the national security interests of the United States.

113.    On April 25, 2012, President Obama exercised this waiver under section 7040(b). He "certif[ied] that it is important to the national security interests of the United States to waive the provisions of section 7040(a) of the [State Appropriations Act of 2012], in order to provide funds appropriated to carry out [the statutory provisions creating the Economic Support Fund], as amended, to the Palestinian Authority." On the same day, President Obama directed Defendant Secretary of State to file a report required pursuant to § 7040(d) of the State Appropriations Act of 2012. *See* White House Office of Press Secretary, Presidential Memorandum—Waiver of Restriction on Providing Funds to the Palestinian Authority, Apr. 25, 2012, *available at* http://www.whitehouse.gov/the-press-office/2012/04/25/presidential-memorandum-waiver-restriction-providing-funds-palestinian-a.

114.    Pursuant to § 7040(d), Defendant Secretary of State's report must "detail[] the justification for the waiver," stet forth "the purposes for which the funds will be spent," and "detail the steps the Palestinian Authority has taken to arrest terrorists, confiscate weapons and dismantle the terrorist infrastructure."

115.    The Plaintiffs have not seen and are not aware of the content of Defendant Secretary of State's report referenced above in support of the waiver. Upon information and belief, that report is not publically available.

116.    Defendant Secretary of State could not have certified, in good faith, as required by § 7040(d), because the Palestinian Authority has not taken reasonable steps to arrest terrorists, confiscate weapons, or dismantle the terrorist infrastructure.

117.   Defendant Secretary of State could not have certified, in good faith, as required by § 7040(d), because the Palestinian Authority has not taken meaningful steps to arrest terrorists, confiscate weapons, or dismantle the terrorist infrastructure.

118.   Section 7040(f) of the State Appropriations Act of 2012, 125 Stat. 1222, prohibits the provision of funds appropriated to carry out portions of the Foreign Assistance Act of 1961 (which includes the Economic Support Fund), "for salaries of personnel of the Palestinian Authority located in Gaza."

119.   Section 7040(f) of the State Appropriations Act of 2012, 125 Stat. 1222, prohibits the provision of funds appropriated to carry out portions of the Foreign Assistance Act of 1961 (which includes the Economic Support Fund), "for assistance to Hamas or any entity effectively controlled by Hamas, any power-sharing government of which Hamas is a member, or that results from an agreement with Hamas and over which Hamas exercises undue influence."

120.   The prohibitions mentioned above do not apply to assistance given to a power-sharing government (such as the Palestinian Authority) "*only if* the President certifies and reports to the Committees on Appropriations that such government, including all of its ministers or such equivalent, has publicly accepted and is complying with the principles contained in [22 U.S.C. § 2378B](b)(1) (A) and (B)…." (Emphasis added). That certification must include statements that "no ministry, agency, or instrumentality of the Palestinian Authority is effectively controlled by Hamas, unless the Hamas-controlled Palestinian Authority has—

a.    "publicly acknowledged the Jewish state of Israel's right to exist; and

b.    "committed itself and is adhering to all previous agreements and understandings with the United States Government, with the Government of Israel, and with the international community, including agreements and understandings pursuant to the Performance-Based Roadmap to a Permanent Two-State Solution to the Israeli-Palestinian Conflict"

121.    Upon information and belief, President Obama has not issued the certification described above.

122.    President Obama could not have provided, in good faith, the required certification described above because the Hamas-controlled Palestinian Authority has not acknowledged (and certainly has not done so publicly) Israel's right to exist and has not committed itself to the "Roadmap to a Permanent Two-State Solution."

123.    Section 7040(f)(2) provides that the President has authority to waive the prohibitions described above *only* with regard to "the administrative and personal security costs of the Office of the President of the Palestinian Authority," "the activities of the President of the Palestinian Authority to fulfill his or her duties as President," and "assistance for the judiciary branch of the Palestinian Authority and other entities" and may do so *only if* the President first:

a.   consults with and submits in writing a "written policy justification" to the "appropriate congressional committees,"

b.   certifies to the "appropriate congressional committees" that providing assistance to the President and judiciary of the Palestinian Authority is in the national security interests of the United States, *and*

c.   certifies to the "appropriate congressional committees" that the proposed beneficiary of U.S. federal assistance "is not a member of, or effectively controlled by (as the case may be), Hamas or any other foreign terrorist organization."

124.   Upon information and belief, President Obama has not exercised the waiver described above.

125.   President Obama could not have provided, in good faith, the certification described above because the Palestinian Authority is effectively controlled by Hamas or another foreign terrorist organization.

126.   Section 7040(f)(5) of the State Appropriations Act of 2012, 125 Stat. 1222, prohibits the provision of funds appropriated to carry out portions of the Foreign Assistance Act of 1961 (which includes the Economic Support Fund), to be "obligated for assistance for the Palestine Liberation Organization."

127.   One or more of the provisions State Appropriations Act of 2012 prohibits the provision of U.S. funding to the Palestinian Authority.

128.   President Obama's waiver of provisions of the State Appropriations Act of 2012, as described above, was improper and not compliant with the requirements set forth in the State Appropriations Act of 2012.

129.   President Obama's waiver of provisions of the State Appropriations Act of 2012, as described above, is invalid.

130.   President Obama's waiver of provisions of the State Appropriations Act of 2012, as described above, provides no authority for the provision of U.S. funding to the Palestinian Authority.

### 2.   Prior Appropriations Acts

131.   The prohibitions on funding to Hamas, the Palestinian Authority, and others within the West Bank and Gaza that are described above and taken from the State Appropriations Act of 2012 have appeared in the exact same form or materially the same form in prior appropriations bills.

132.   Sections 7036-7040 of the Department of State, Foreign Operations, and Related Programs Appropriations Act of 2010, Pub. L. 111–117, 123 Stat. 3312, 3364-68 ("State Appropriations Act of 2010") (passed Dec. 16, 2009), are materially identical to the corresponding provisions of the State Appropriations Act of 2012.

133.   Prior appropriations acts, such as the State Appropriations Act of 2010, prohibit the provision of U.S. funding to the Palestinian Authority in much the same was as the prohibitions set out above.

134.   Much of the language of the appropriations acts is codified in the Palestinian Anti-Terrorism Act of 2006, 22 U.S.C. § 2378b note. The Palestinian Anti-

Terrorism Act of 2006 expresses that "It shall be the policy of the United States … to urge members of the international community to avoid contact with and refrain from supporting the terrorist organization Hamas until it agrees to recognize Israel, renounce violence, disarm, and accept prior agreements, including the Roadmap."

135.    The Palestinian Anti-Terrorism Act of 2006 codifies prohibitions on funding to the nongovernmental organizations in the West Bank or Gaza in the fiscal years ending 2007 and 2008. Many of those prohibitions remain in effect by virtue of their repetition elsewhere and in the various appropriations acts.

136.    The Palestinian Anti-Terrorism Act of 2006 required the Secretary of State to "take all appropriate steps to ensure that [assistance to nongovernmental organizations in the West Bank or Gaza] is not provided to or through any individual or entity that the Secretary knows, or has reason to believe, advocates, plans, sponsors, engages in, or has engaged in, terrorist activity."

137.    The Palestinian Anti-Terrorism Act of 2006 prohibited "assistance to nongovernmental organizations for the West Bank or Gaza … for the purpose of recognizing or otherwise honoring individuals who commit, or have committed, acts of terrorism."

138.    As such, the requirement and prohibition described above remain in effect for the present fiscal year and all relevant fiscal years.

### 3.    Prohibition Specific to the Palestinian Authority

139.    22 U.S.C. § 2378b prohibits the provision of all U.S. foreign assistance (that described by Chapter 32 of the Title 22 of the U.S. Code) "to the Hamas-controlled Palestinian Authority," except where the President certifies that:

a.    "no ministry, agency, or instrumentality of the Palestinian Authority is effectively controlled by Hamas, unless the Hamas-controlled Palestinian Authority has—

   i.    "publicly acknowledged the Jewish state of Israel's right to exist; and

   ii.    "committed itself and is adhering to all previous agreements and understandings with the United States Government, with the Government of Israel, and with the international community [relating to the] Roadmap to a Permanent Two-State Solution to the Israeli-Palestinian Conflict…; and

b.    "the Hamas-controlled Palestinian Authority has made demonstrable progress toward—

   i.    "completing the process of purging from its security services individuals with ties to terrorism;

   ii.    "dismantling all terrorist infrastructure within its jurisdiction, confiscating unauthorized weapons, arresting and bringing terrorists to justice, destroying unauthorized

arms factories, thwarting and preempting terrorist attacks, and fully cooperating with Israel's security services;

iii. "halting all anti-American and anti-Israel incitement in Palestinian Authority-controlled electronic and print media and in schools, mosques, and other institutions it controls, and replacing educational materials, including textbooks, with materials that promote peace, tolerance, and coexistence with Israel;

iv. "ensuring democracy, the rule of law, and an independent judiciary, and adopting other reforms such as ensuring transparent and accountable governance; and

v. "ensuring the financial transparency and accountability of all government ministries and operations."

140. Upon information and belief, President Obama has not made the certification described above.

141. President Obama cannot, in good faith, certify any of the following requisite statements because they are falsehoods

a. the Palestinian Authority is not effectively controlled by Hamas,

b. the Palestinian Authority has publicly acknowledged the Jewish state of Israel's right to exist,

c. the Palestinian Authority has committed itself to the Roadmap to a Permanent Two-State Solution to the Israeli-Palestinian Conflict,

d.   the Palestinian Authority has made demonstrable progress towards purging from its security services individuals with ties to terrorism,

e.   the Palestinian Authority has made demonstrable progress towards dismantling the terrorist infrastructure within its jurisdiction, confiscating unauthorized weapons, arresting and bringing terrorists to justice, destroying unauthorized arms factories, thwarting and preempting terrorist attacks, and fully cooperating with Israel's security services,

f.   the Palestinian Authority has made demonstrable progress towards halting all anti-American and anti-Israel incitement in Palestinian Authority-controlled electronic and print media and in schools, mosques, and other institutions it controls, and replacing educational materials, including textbooks, with materials that promote peace, tolerance, and coexistence with Israel,

g.   the Palestinian Authority has made demonstrable progress towards ensuring democracy, the rule of law, and an independent judiciary, and adopting other reforms such as ensuring transparent and accountable governance, or

h.   the Palestinian Authority has made demonstrable progress towards ensuring the financial transparency and accountability of all government ministries and operations.

-27-

142.   Even if President Obama is able to certify one of the items described above he is not able to certify all of them in good faith.

143.   Given that President Obama has not and cannot issue the certification described above, 22 U.S.C. § 2378b prohibits the provision of all U.S. foreign assistance to the Palestinian Authority unless a presidential waiver applies.

144.   22 U.S.C. § 2378b(e) permits the President to waive the provisions of 22 U.S.C. § 2378b *only* with regard to "the administrative and personal security costs of the Office of the President of the Palestinian Authority," "the activities of the President of the Palestinian Authority to fulfill his or her duties as President," and "assistance for the judiciary branch of the Palestinian Authority and other entities" and may do so *only if* the President first

a.     consults with and submits in writing a "written policy justification" to the "appropriate congressional committees,"

b.     certifies to the "appropriate congressional committees" that providing assistance to the President and judiciary of the Palestinian Authority is in the national security interests of the United States, *and*

c.     certifies to the "appropriate congressional committees" that the proposed beneficiary of U.S. federal assistance "is not a member of, or effectively controlled by (as the case may be), Hamas or any other foreign terrorist organization."

145.    Upon information and belief, the President has not exercised the waiver described above.

146.    President Obama could not have provided, in good faith, the certification described above because the Palestinian Authority is effectively controlled by Hamas and/or another foreign terrorist organization.

147.    As such, the provision of U.S. funding to the Palestinian Authority is prohibited by 22 U.S.C. § 2378b.

**4.    Prohibition Specific to the West Bank and Gaza**

148.    22 U.S.C. § 2378c prohibits the provision of all U.S. foreign assistance (that described by Chapter 32 of the Title 22 of the U.S. Code) to nongovernmental organizations for the West Bank and Gaza unless

a.    the President has made the certification described above or

b.    certain exceptions (set out above) are applicable.

149.    Upon information and belief, the President has not made the certification described above. Accordingly, all U.S. foreign assistance to nongovernmental organizations in the West Bank and Gaza is prohibited *unless, as* 22 U.S.C. § 2378c states in pertinent part, that funding is given as assistance to

a.    "meet food, water, medicine, health, or sanitation needs, or other assistance to meet basic human needs,"

b.    "promote democracy, human rights, freedom of the press, non-violence, reconciliation, and peaceful coexistence, provided that

such assistance does not directly benefit Hamas or any other foreign terrorist organization"

c.     provide "[a]ssistance, other than funding of salaries or salary supplements, to individual members of the Palestinian Legislative Council who the President determines are not members of Hamas or any other foreign terrorist organization, for the purposes of facilitating the attendance of such members in programs for the development of institutions of democratic governance …", or

d.     provide any other type of assistance in the "in the national security interest of the United States," *provided* that the President, before obligating that assistance, consult with the "appropriate congressional committees regarding the specific programs, projects, and activities to be carried out using such assistance" and "submits to the appropriate congressional committees a written memorandum that contains the determination of the President" that the assistance is necessary for the national security interests of the United States.

150.     The provision of U.S. funding to the West Bank and Gaza for reasons not described or satisfying any of the exceptions listed above is prohibited under 22 U.S.C. § 2378c.

### 5.    Prohibitions Specific to the Palestinian Liberation Organization

151.    Title 22 U.S.C. § 5202 prohibits, *inter alia*, any U.S. citizen or anyone otherwise subject to § 5202 to

a.    "receive anything of value except informational material from the [Palestinian Liberation Organization ("PLO")] or any of its constituent groups, any successor thereto, or any agents thereof" if done to further the interests of the PLO or successor, or

b.    "expend funds from the PLO or any of its constituent groups, any successor thereto, or any agents thereof", if done to further the interests of the PLO or successor.

152.    Title 22 U.S.C. § 2227 prohibits the provision of federal funds authorized for international development and international programs to be made available to the PLO.

153.    Title 22 U.S.C. § 2227 prohibits the provision of federal funds authorized for international development and international programs that are intended to "provide benefits to the Palestine Liberation Organization or entities associated with it."

154.    Funding provided to the Palestinian Authority, and/or the proceeds and effects of that funding, regularly wind up in the hands of the PLO and/or its agents and/or principals.

155.    The Palestinian Authority is not a state.

156.    The Palestinian Authority is inseparable from the PLO.

157. The Palestinian Authority is largely controlled by the PLO.

158. At least some of the chief actors of the Palestinian Authority are controlled by the PLO.

159. At least some of the chief actors of the Palestinian Authority are also chief actors of the PLO.

160. The provision of U.S. foreign aid and development grants to the Palestinian Liberation Organization is prohibited by 22 U.S.C. § 2227.

161. The provision of U.S. foreign aid and development grants to the Palestinian Authority is prohibited by 22 U.S.C. § 2227.

162. Cooperation between the U.S. and the PLO in foreign aid programs is prohibited by 22 U.S.C. § 5202.

163. Cooperation between the U.S. and the Palestinian Authority in foreign aid programs is prohibited by 22 U.S.C. § 5202.

**6.** **Prohibitions against Material Support of Terrorists and of Terrorist Organizations**

164. Title 18 U.S.C. § 2339A prohibits the provision of material support to terrorists.

165. Title 18 U.S.C. § 2339B prohibits the provision of material support to terrorist organizations.

166. The Supreme Court has interpreted the material support provisions to bar the provision of "*any* contribution" to terrorist organizations on the grounds that money is fungible and that "any material support to [such] organizations will

ultimately inure to the benefit of their criminal, terrorist, functions." *Holder v. Humanitarian Law Project*, 561 U.S. ___, 130 S. Ct. 2705, 2724, 2728 (2010) (emphasis added).

167.    Hamas is a terrorist organization for the purposes of 18 U.S.C. § 2339B.

168.    Many or all of the individual actors that operate Hamas are terrorists for the purposes of 18 U.S.C. § 2339A.

169.    As stated above, the PLO has committed numerous acts of terrorism, including:

170.    The PLO has committed itself to violence, declaring that "armed struggle is the only way to liberate Palestine, thus it is an overall strategy, not merely a tactical phase."

171.    The PLO has been and continues to be, in the words of a former Attorney General of the United States, "in the thick of international terror."

172.    The PLO has been defined by Congress as a terrorist organization. 22 U.S.C. § 5201.

173.    The PLO is a terrorist organization for the purposes of 18 U.S.C. § 2339B.

174.    Congress which legislated 18 U.S.C. § 2339B was presumably aware of 22 U.S.C. § 5201 and, if it desired not to include the PLO within 18 U.S.C. § 2339B, it would have made an explicit exclusion.

175.   Many of the individual actors that operate the PLO are terrorists for the purposes of 18 U.S.C. § 2339A.

176.   Individual organizational members of the PLO are terrorist organizations for the purposes of 18 U.S.C. § 2339B.

177.   The Popular Front for the Liberation of Palestine is a terrorist organization that has committed numerous acts of terrorism.

178.   The Popular Front for the Liberation of Palestine is a terrorist organization for the purposes of 18 U.S.C. § 2339B.

179.   Many of the individual actors that operate the Popular Front for the Liberation of Palestine are terrorists for the purposes of 18 U.S.C. § 2339A.

180.   Hamas controls the government of the Palestinian Authority.

181.   The PLO also plays a material role in the operation of the Palestinian Authority.

182.   The provision of "any contribution" to the Palestinian Authority is a violation of 18 U.S.C. §§ 2339A, 2339B.

### 7.    Prohibitions on Aid to the United Nations Relief and Works Agency for Palestine Refugees in the Near East

183.   22 U.S.C. § 2221(c) prohibits contributions by the United States to UNRWA *unless* UNRWA "take[s] all possible measures to assure that no part of the United States contribution shall be used to furnish assistance to any refugee who is receiving military training as a member of the so-called Palestine Liberation Army or any other guerrilla type organization or who has engaged in any act of terrorism."

184.    Upon information and belief, UNRWA is not taking "all possible measures to assure that no part of the United States contribution shall be used to furnish assistance to any refugee who is receiving military training as a member of the so-called Palestine Liberation Army or any other guerrilla type organization or who has engaged in any act of terrorism."

185.    Title 22 U.S.C. § 2227 prohibits the provision of federal funds authorized for international development and international programs to be made available to the PLO.

186.    Title 22 U.S.C. § 2227 prohibits the provision of federal funds authorized for international development and international programs that are intended to "provide benefits to the PLO or entities associated with it."

187.    Upon information and belief, UNRWA has a duty to ensure that its funds (including funds derived from the United States) are not made available to the PLO and UNRWA is in breach of that duty.

188.    As such, federal funding to UNRWA is prohibited by 22 U.S.C. § 2221(c) and 22 U.S.C. § 2227 as well as other federal statute.

**E.     Federal Funding to the Palestinian Authority, the West Bank, and Gaza**

189.     Since the mid-1990s, the United States has given the Palestinians over $4,000,000,000.

190.    The Palestinians in the West Bank and Gaza are among the largest per capita recipients of U.S. foreign aid worldwide.

191.    Since the fiscal year ending September 30, 2008, annual federal aid to the West Bank and Gaza has averaged nearly $600,000,000.

192.    Since the fiscal year ending September 30, 2008, annual federal aid to Palestinian Authority has averaged approximately $300,000,000.

193.    Since the fiscal year ending September 30, 2008, a majority (or large plurality) of the remaining annual $300,000,000 has gone to the office of Palestinian Authority Prime Minister.

**UNRWA**

194.    The United States is the largest single-state donor to UNRWA.

195.    Since 1950, the United States has given approximately $4,000,000,000 to UNRWA.

196.    Since 2007, the United States has given approximately $200,000,000 annually to UNRWA.

197.    In 2011, the United States contributed approximately 25% of UNRWA's total budget.

198.    United States contributions in UNRWA in 2011 totaled approximately $249,400,000.

199.    United States contributions to UNRWA in 2012 are projected to total approximately $226,000,000.

200.    UNRWA purportedly provides considerable annual aid to residents of the West Bank and Gaza.

-36-

201.    On or about August 18, 2011, members of Congress placed a hold on the planned provision of approximately $342,000,000 Economic Support Fund assets intended for the support of the Palestinian Authority and interests in the West Bank and Gaza.

202.    The hold on $150,000,000 of that money was lifted in the fall of 2011.

203.    In April 2012, Defendant Secretary of State decided to provide the Palestinian Authority (or others within the West Bank and Gaza) with the remaining approximately $192,000,000, notwithstanding that the congressional hold on that funding had not been lifted.

204.    Pursuant to President Obama's waiver described above and (perhaps) Defendant Secretary of State's certification described above, the United States gave to the Palestinian Authority and/or others within the West Bank and Gaza approximately $192,000,000 on April 28, 2012.

205.    In the fiscal year ending September 30, 2012, the United States obligated and/or gave approximately $200,000,000 of Economic Support Fund resources directly to the Palestinian Authority.

206.    In the fiscal year ending September 30, 2012, the United States obligated and/or gave approximately $196,000,000 of Economic Support Fund resources to the West Bank and Gaza, acting through USAID.

207.    In the fiscal year ending September 30, 2012, the United States obligated and/or gave approximately $67,000,000 to Palestinian Authority security forces (in addition to the amounts referenced in paragraphs 205-206).

208.    In the fiscal year ending September 30, 2012, the United States obligated and/or gave approximately $33,000,000 to the Palestinian Authority Ministry of the Interior (in addition to the amounts referenced in paragraphs 205-207).

209.    In budget proposals for the fiscal year ending September 30, 2013, the United States intends to obligate $150,000,000 of Economic Support Fund resources directly to the Palestinian Authority.

210.    In budget proposals for the fiscal year ending September 30, 2013, the United States intends to obligate $220,000,000 of Economic Support Fund resources to the West Bank and Gaza, acting through USAID.

211.    In budget proposals for the fiscal year ending September 30, 2013, the United States intends to obligate $40,800,000 to Palestinian Authority security forces (in addition to the amounts referenced above).

212.    In budget proposals for the fiscal year ending September 30, 2013, the United States intends to obligate $29,200,000 to the Palestinian Authority Ministry of the Interior (in addition to the amounts referenced above.

213.    Upon information and belief, a significant percentage of annual federal aid to the Palestinian Authority and its various offices, the West Bank, and Gaza is given in *cash*.

214.    In the fiscal years ending September 30, 2008 and September 30, 2009, USAID gave approximately $500,000,000 to recipients in the West Bank and Gaza.

215.    Once cash leaves the hands of USAID, the State Department, or any other federal source, it is impossible or nearly impossible to track.

216.    Since 2007, approximately $645,000,000 of the International Narcotics Control and Law Enforcement (INCLE) account has been appropriated or designated for use in the West Bank.

217.    In budget proposals for the fiscal year ending September 30, 2013, the United States intends to obligate $70,000,000 of the funds in the INCLE account for use in the West Bank.

218.    INCLE funds are used to train, reform, advise, house, and provide non-lethal equipment for PA civil security forces in the West Bank.

219.    Money and/or other assistance provided by the federal government to the Palestinian Authority is used, in part, by the Palestinian Authority to provide for the salaries of Palestinian Authority personnel located in Gaza.

F.    **The Palestinian Authority's Use of Money in Aid of Terrorism**

220.    Upon information and belief at least some of the aid given to the Palestinian Authority is given in cash or other liquid assets.

221.    The assets transferred to the Palestinian Authority are not traceable or not reasonably traceable.

222.    At least some of the direct aid given to the Palestinian Authority is used to finance terrorism.

223.    Many of the members of the Palestinian Authority, and the constituent groups of the Palestinian Authority, are themselves terrorists or have ties to terrorism.

224.    Controls to prevent against the diversion of money by the Palestinian Authority to terrorist objectives are inadequate.

225.    The Palestinian Authority does not deem certain terrorist activity as criminal activity and therefore cannot be trusted to prevent the diversion of money to terrorist or for terrorism.

226.    The Palestinian Authority pays the salaries of terrorists.

227.    The Palestinian Authority supports non-governmental organizations that have a terrorist component.

228.    Even if the Palestinian Authority were able to and did adequately ensure that the money that it gives to non-governmental organizations that have a terrorist component is placed behind a firewall, the support of such entities would nonetheless facilitate terrorism by supporting organizations that practice terrorism.

229.    Upon information and belief, the Palestinian Authority pays monthly salaries to approximately 5,500 prisoners in Israeli prisons, including convicted terrorists. Despite constant budget shortages the Palestinian Authority pays over $5,000,000 a month directly to terrorists and their families for their violent and illegal services to the Palestinian Authority.

230.    Upon information and belief, a law signed and published in the official Palestinian Authority Registry in April 2011 puts on the Palestinian Authority

payroll to receive a monthly salary all Palestinians and Israeli Arabs imprisoned in Israel for terror crimes. The salaries to imprisoned terrorists are in excess of the average wage paid to Palestinians

231.    The law referenced formalizes what had been a long-standing practice of the Palestinian government.

232.    The Palestinian Authority funds the salaries for terrorists from its general budget, much of which is derived from U.S. foreign aid.

233.    On its terms, the Palestinian law mentioned in paragraph 230 applies only to the extent that funding is available. Because the Palestinian Authority is dependent on U.S. foreign aid, the salaries paid to terrorists, as described above, is directly caused by the provision of U.S. foreign aid to the Palestinian Authority.

234.    The Palestinian Authority honors terrorists who have killed civilians, presenting them as heroes and role models.

235.       By paying the salaries of terrorists, as described above, the Palestinian Authority is encouraging more people to become terrorists in the knowledge that their families will be supported if they do.

236.    Because, as alleged above, the United States' funding is necessary for the continued operation of the Palestinian Authority's terrorist recruitment operations, the United States is a willing participant in that recruitment operation by facilitating the Palestinian Authority's efforts to encourage more of its civilians to become terrorists.

237. Upon information and belief, INCLE funds intended to train, reform, advise, house, and provide non-lethal equipment for PA civil security forces in the West Bank have gotten into terrorist hands in the past and INCLE undertakes no reasonable means of preventing INCLE funds from reaching the hands of terrorists in the future.

238. The Palestinian Authority condones and/or teaches terrorism by teaching Palestinian children that terrorism is a legitimate form of "resistance" to the Israeli "occupation." Textbooks used in Palestinian Schools, with the knowledge and consent of the Palestinian Authority and/or Palestinian government officials, teach that the Jews "stole" the land from the Palestinians and Palestinian children are taught at a very early age to glorify terrorism. The Palestinian Authority openly and publicly compares Israel to Nazi Germany and the founding of Israel to a Nazi project, thus legitimizing the murder of innocent Israelis.

239. Upon information and belief the Palestinian Authority asserts control and provides governmental financing for much of the media in the Palestinian areas. The media is utilized to justify acts of terrorism. Palestinians generally view messages that they see on Palestinian media sources as representative of the official policy of the Palestinian Authority.

240. Via the Palestinian media the Palestinian Authority has permeated Palestinian culture with terrorism. Palestinian Authority Television and radio frequently air programs glorifying terrorism and terrorists.

241. Leaders of the Palestinian community, including members of the Palestinian Authority government have frequently incited violence against Jews and have publicly legitimized terrorism via the Palestinian Authority media.

## G. The Diversion of Aid for the West Bank and Gaza to Terrorists and for Terrorism

242. USAID, following a 2007 internal audit, concluded that it could not "reasonably ensure" that aid that it provided would not wind up in terrorist hands.

243. USAID requires all non-governmental organizations that receive aid to certify that they do not provide material support to terrorists.

244. However, USAID has no reasonable means and undertakes no reasonable steps of ensuring that aid given to non-governmental organizations does not in fact wind up being diverted to terrorism.

245. Upon information and belief, much of the aid that USAID provides to recipients in the West Bank and Gaza is given in cash and is not traceable.

246. USAID knows or is willfully blind to the fact that much of the aid that it provides in the West Bank and Gaza is used to harm innocent Israeli civilians.

247. USAID funds to UNRWA facilitates violence against Israeli citizens by creating a climate of hostility in the West Bank and Gaza. In addition, USAID funds have been utilized to glorify Palestinian terrorists.

248. US funding to UNRWA facilitates Hamas's terrorist activities by freeing up Hamas' time and resources.

249.    Upon information and belief, UNRWA undertakes inadequate efforts to ensure that the recipients of its grants are not members of Hamas or other terrorist groups or that funds are not diverted to terrorist organizations.

250.    UNRWA has no reasonable means of ensuring that aid given to non-governmental organizations does not in fact wind up being diverted to terrorism.

251.    Any efforts that UNRWA does take to screen its beneficiaries are ineffective, in part because their screening lists do not include Hamas, Palestine Islamic Jihad, Popular Front for the Liberation of Palestine and many other known terrorist organizations that operate in and around Israel.

252.    Upon information and belief, much of the aid that UNRWA provides winds up being diverted to terrorism and is used to harm civilians.

## COUNT I

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7036)

253.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

254.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by permitting, sanctioning, and or encouraging the use of federal funds in support of the creation of a Palestinian state.

255.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing funding to actors who use that money to further terrorist activities or to support terrorists in the furtherance of their objectives.

256.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing funding to Palestinian Prime Minister Salam Fayyad who has publically stated his objective to declare unilateral Palestinian statehood in the sovereign territories of Israel and is using United States foreign aid to move towards those objectives.

257.    Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

258.    Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

259.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT II

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7039)

260.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein

261.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing Economic Support Fund resources to the

Palestinian Authority, its officers and offices, non-governmental organizations in the West Bank and Gaza, and others without adequate procedures in place to ensure that U.S. foreign aid disbursed in those regions is not given to and does not wind up under the control of any person or entity that advocates, plans, sponsors, engages in, or has engaged in, terrorist activity.

262. Defendant Secretary of State Clinton has violated the State Appropriations Act of 2012 and prior appropriations acts by permitting Economic Support Fund resources to be provided to the Palestinian Authority, its officers and offices, non-governmental organizations in the West Bank and Gaza, and others without previously certifying, in good faith, that adequate procedures are in place to review the use of Economic Support Fund resources utilized in the West Bank and Gaza that can reasonably ensure that no Economic Support Fund resources are given to or wind up under the control of any person or entity that advocates, plans, sponsors, engages in, or has engaged in, terrorist activity.

263. Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

264. Defendant Secretary of State Clinton has a nondiscretionary duty to ensure provide the certification required by State Appropriations Act of 2012 § 7039 and corresponding sections in prior appropriations acts or, alternatively, to ensure that no Economic Support Fund resources be provided in the absence of her certification.

265. Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

266.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361

## COUNT III

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7039(c))

267.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein

268.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by permitting, encouraging, remaining willfully blind to, and/or facilitating the use of funds appropriated under the Economic Support Fund, to be made available for the purpose of recognizing or otherwise honoring individuals who commit, or have committed acts of terrorism.

269.    Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

270.    Defendants have a nondiscretionary duty to ensure that recipients of federal funds are not using those funds to recognize or honor individuals who commit acts of terrorism.

271.    Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

272.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT IV

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7040(a))

273.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

274.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by obligating or expending Economic Support Fund resources to the Palestinian Authority without a valid presidential waiver.

275.    President Obama's waiver of § 7040(a), issued on April 25, 2012, is invalid for failure to comply with the terms of § 7040(d)-(e).

276.    Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

277.    Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

278.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT V

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7040(f))

279.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

280.     Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing Economic Support Fund resources for the salaries of personnel of the Palestinian Authority located in Gaza.

281.     Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

282.     Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

283.     This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT VI

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7040(f))

284.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

285.     Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing Economic Support Fund resources to individuals and entities controlled by or affiliated with Hamas and to members of Hamas.

286.     Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing Economic Support Fund resources to accomplish civil objectives that Hamas would otherwise be responsible for, thus freeing up Hamas' existing resources for other causes, principally including terrorism.

287.   Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

288.   Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

289.   This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT VII

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7040(f))

290.   Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

291.   Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by providing Economic Support Fund resources to the Palestinian Authority despite that Hamas holds considerable power in the Palestinian Authority, the Palestinian Authority provides sanctuary to the Popular Front for the Liberation of Palestine, and President Obama has not, in good faith, satisfied the certification requirements of § 7040(f)(2)-(4).

292.   Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

293.   Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

294.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT VIII

### Violation of State Appropriations Act of 2012
### and prior appropriations acts
### (Pub. L. 112-74, 125 Stat. 1164, § 7040(f)(5))

295.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

296.    Defendants have violated the State Appropriations Act of 2012 and prior appropriations acts by obligating Economic Support Fund resources in a manner that effectively supports the Palestinian Liberation Organization, an entity that controls the Palestinian Authority, which is an annual recipient of federal funds.

297.    Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

298.    Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

299.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT IX

### Violation of the Palestinian Anti-Terrorism Act of 2006
### (22 U.S.C. § 2378b)

300.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

301.     Defendants have violated the Palestinian Anti-Terrorism Act by providing U.S. foreign assistance to the Hamas-controlled Palestinian Authority without regard to the restrictions of 22 U.S.C. § 2378b.

302.     Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

303.     Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

304.     This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT X

### Violation of the Palestinian Anti-Terrorism Act
### (22 U.S.C. § 2378c)

305.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

306.     Defendants have violated the Palestinian Anti-Terrorism Act by providing U.S. foreign assistance to nongovernmental organizations in the West Bank and Gaza without regard to the restrictions of 22 U.S.C. § 2378c.

307.     Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

308.     Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

309.     This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT XI

### Violation of 22 U.S.C. § 5202

310.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

311.     Defendants have violated 22 U.S.C. § 5202 by engaging the Palestinian Liberation Organization and/or its successor and affiliate, the Palestinian Authority, in cooperative projects.

312.     Defendants have a nondiscretionary duty to cease engaging in such cooperative projects and to comply with federal statute.

313.     Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

314.     This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT XII

### Violation of 22 U.S.C. § 2227

315.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

316.     Defendants have violated 22 U.S.C. § 2227 by making available to the Palestinian Liberation Organization funds authorized for international development

and international programs, including, without limitation, resources of the Economic Support Fund and funds provided to UNRWA.

317. Defendants have violated 22 U.S.C. § 2227 by making available to the Palestinian Authority, an entity effectively controlled by and/or closely associated with the Palestinian Liberation Organization, funds authorized for international development and international programs, including, without limitation, resources of the Economic Support Fund and funds provided to UNRWA.

318. Defendants have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

319. Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

320. This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT XIII

### Violation of 22 U.S.C. § 2221(c)

321. Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

322. All Defendants but USAID and Shah have violated 22 U.S.C. § 2221(c) by funding or facilitating the funding of UNRWA notwithstanding that UNRWA provides funding and/or does not take adequate measures to prevent its funding from to terrorists and terrorist organizations.

323.    All Defendants but USAID and Shah have violated 22 U.S.C. § 2221(c) by funding or facilitating the funding of UNRWA notwithstanding that UNRWA has not and will not take all possible measures to assure that no part of the United States contribution shall be used to furnish assistance to any refugee who has engaged in any act of terrorism

324.    All Defendants but USAID and Shah have a nondiscretionary duty to cease providing funds as stated above and to comply with federal statute.

325.    All Defendants but USAID and Shah have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

326.    This Court has jurisdiction to compel all Defendants but USAID and Shah to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT XIV

### Violation of Anti-Terrorism Act
### (18 U.S.C. § 2339A)

327.    Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

328.    Defendants have violated the Anti-Terrorism Act by providing material support to terrorists in the West Bank and Gaza, including terrorists who work for and/or are the principals (and/or agents) of the Palestinian Authority and/or affiliated organizations.

329.     Defendants have violated the Anti-Terrorism Act by providing funding used to pay the salaries of terrorists as part of a program that is designed to glorify terrorism and facilitate future terrorist activity.

330.     Defendants have a nondiscretionary duty to cease providing funds and other material support as stated above and to comply with federal statute.

331.     Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

332.     This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## COUNT XV

## Violation of Anti-Terrorism Act
## (18 U.S.C. § 2339B)

333.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

334.     Defendants have violated the Anti-Terrorism Act by providing material support to terrorist organizations in the West Bank and Gaza, which include Hamas (a party to and beneficiary of aid to the Palestinian Authority) and members of the Palestinian Liberation Organization, by providing aid to the Palestinian Authority and others in the region.

335.     Defendants have a nondiscretionary duty to cease providing funds and other material support as stated above and to comply with federal statute.

336.    Defendants have a nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authority.

337.    This Court has jurisdiction to compel the Defendants to perform a nondiscretionary duty pursuant to the Mandamus and Venue Act, 28 U.S.C. §1361.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

(1)    a declaration that the Defendants have violated federal statutes;

(2)    a permanent injunction requiring Defendants to comply with the law and cease all funding to the Palestinian Authority, UNRWA, and others in the West Bank and Gaza, until those actors are ready and able to fully comply with federal prohibitions against support for terrorism;

(3)    mandamus relief compelling the government officers and agencies of the United States government to comply with statue, take adequate measures to prevent the diversion of federal funds to support terrorism, and to seek recovery of funds provided without authority;

(4)    costs and attorneys fees; and

(5)    such other further relief that this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues.

Dated:   New York, New York
            November 25, 2012

                                          Yours,

                                          NORMAN STEINER, ATTORNEY AT LAW
                                          *Attorney for the Plaintiffs*

                                          by: _____
                                                    Norman Steiner

                                          233 Broadway, Suite 900
                                          New York, New York 10279
                                          212-240-9111
                                          nsteiner@nsteinerlaw.com